The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez! Oyez! Oyez! All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you, Madam Clerk. I want to welcome the lawyers this morning to the Fourth Circuit Court of Appeals. We'd like to be with you in Richmond, but we can't be there, so this is the best we can do. Our first case is Variety Stores, Inc. v. Walmart. And we've got, we have cross appeals, and the, both the lawyers for the parties will argue twice as a result, and the first, we'll recognize Mr. Pizzella, speaking for Appellant  Mr. Pizzella, are you there? I'm here, Your Honor. Good to have you with us, sir. Nice to be here. Thank you for having me. Go right ahead. May it please the Court, Mark Pizzella from Orrick, Harrington & Sutcliffe on behalf of the Appellant, Walmart. Our brief set out several errors related to liability, willfulness, jury reassembly, and remedies, but I'd like to begin with a bit of context. This is a six-year-old trademark dispute between two large retailers concerning inexpensive grills and grilling accessories. The parties use different marks that use different words, in different fonts, in different sizes, and incorporating different logo elements. The only thing the two marks have in common is the word backyard, which by Variety's own admission, is a word that is widely used on grilling products. Walmart didn't choose its mark to evoke variety or any of the other companies that use that word. It chose its mark to describe what its product is, a backyard grill. After three trials, and now two appeals, it remains undisputed that there's no evidence that Walmart's decision to use its mark ever confused a single consumer in the real world. Walmart sold hundreds of millions of products over a period of years, and Variety never identified a single confused consumer. Liability in a trademark case turns on the likelihood of consumer confusion. What better evidence of the absence of a likelihood of consumer confusion could there be than the absence of actual confusion? But didn't the jury hear all this? Don't we owe some deference to the jury's verdict after hearing all this? Yes, Your Honor. However, when the evidence presented at trial, which is a more complete record, no reasonable jury could conclude on the four factors that this court remanded the last time around that Variety had carried its burden. There was no evidence offered on commercial strength. This court found that as to conceptual strength, Variety's mark was weak. As to commercial strength, Variety offered only indirect evidence of commercial strength that itself missed the mark. But beyond that, the testimony on direct evidence of commercial strength was that Variety's mark was not a national big-time brand. That's a JA-782. It was unlikely that there was very high awareness of backyard. That's a JA-809. And that neither of the parties' marks are very well known. That's a JA-811. Given that context... Mr. Pezzelli, this is Judge Floyd. In your brief, you did not address factors 3, 4, 5, 8, and 9 on the test for likelihood of confusion. If those factors favor Variety, is that enough for a jury to find likelihood of confusion? No, Your Honor. And very specifically, this court in Grayson, George, and Kerr first has affirmed summary judgment in favor of defendant where marks were weak, dissimilar, and there was no evidence of actual intent or actual confusion. That is this case. So in those three cases, this court affirmed summary judgment for defendant. Those facts align precisely here. So we're putting aside those other elements, those four critical factors, all the way in favor of Walmart. And no reasonable jury could conclude otherwise. Now, I'd like to address Wilkins in particular, if I could just for a moment. So apart from the liability finding, the court should direct entry on no willfulness, or at the very least, the question of willfulness should be remanded and retried because the trial court erred in failing to instruct the jury. The key error in both the district courts and Variety's willfulness theory is that they conflate knowledge of another's mark with willful infringement of that mark. That's wrong as a matter of law. And it requires reversal because at the absolute most, Variety could show only that Walmart knew about Variety's mark. Knowing about a mark is not enough under this court's precedence. The willfulness finding is also separately subject to remand because the court erred in failing to instruct the jury on this term of art, which is required. Was there a specific interrogatory on the verdict forum about willfulness? Yes, Your Honor. Okay. But there was no instruction about willfulness. Correct, Your Honor. So the jury was at sea as to its meaning. And you say that that was error not to instruct on willfulness. Correct. Willfulness is subject to a whole host of different meanings. What's our standard of review on that point? That's clear error, Your Honor. The failure to instruct on the term of art is clear error. But the other side says you waived it. That would make it plain error, wouldn't it? Two answers there, Your Honor. One, there was no waiver. No, but Variety's position is it was waived. And that the willfulness instruction issue is here on plain error review. That's their position. So you need to tell me how you shoot that down. It is plain error, Your Honor. The failure to instruct on a term of art is a plain error. But you say it's not plain error review. The failure to instruct is plain error, Your Honor. So are you admitting that that... Go ahead, Judge Becker. Let us just pull it. The way I look at the record, there was some objection, but not really to the instruction about willfulness. You objected in one place, but that's a different instruction from what you're arguing now, isn't it? There are two arguments on the willfulness issue, Your Honor. One, as to the failure to instruct, we objected in a separate filing, which is a JA-413, and at the charging conference, which is JA-428. Okay. That failure is error. And in addition, putting aside waiver, assume waiver, the court had an independent obligation to define a term of art. And the court failed in that obligation because the jury was obligated to only find willfulness where the defendant intentionally attempts to confuse the public or intentionally attempts to free ride on Variety's goodwill. Variety offered no evidence on either of those legal statements. Sorry, Your Honor. You offered a willfulness instruction, as Walmart did, and then it was discussed specifically at the charge conference. Isn't that right? That is correct, Your Honor. We offered a willfulness instruction at JA-413. And it was discussed at the charge conference? Correct. Okay. And at your position, that's enough to preserve the issue for appeal? Yes, Your Honor, but separately, the court had an obligation to instruct the jury on the term of art. I understand, and even if it's not enough, that you satisfy plain error review. But I don't know if I were you, I'd be willing to give up the proposition that it's not here on plain error review. You ought to be arguing, I think, that it's here on harmless error review and that it was properly preserved. You're exactly correct, Your Honor. It was preserved. The other side can argue for it. They'll be arguing it's on plain error review because that helps them. But here, you don't want it to be a plain error review. I wouldn't if I were in your shoes, but you can do however you want. Your Honor, you're exactly correct. As to the first argument, it's not a plain error review. And we preserved the argument as set forth in the brief in the separate filing and at the time. But the court's… …instruct was plain error review. And you want a new trial on liability. And that would necessarily vacate the damages awards. And we wouldn't have to address anything else on a… You'd get a new trial on everything, wouldn't you? You're correct, Your Honor. You would. If you're right on this instruction, on the willfulness stuff. You're correct, Your Honor. All right. I'm sorry. I didn't mean to interrupt you. Not at all. I'd like to make sure I discuss the motion. This is monetary remedies rulings. And I'll start with a critical procedural error by reassembling the jury 110 days after the jurors were excused. Reassembling a jury requires a careful consideration of the potential for prejudice after the jury is initially discharged. The Supreme Court's decision in deeds holds that even a few minutes between discharge and re-enpanelment may be impermissible. Here, 110 days passed. Akeets instructs that prior to reassembly, the court must engage in a multi-part test to determine whether reassembly is proper. The trial court refused to apply that test. Akeets also instructs that the court should bargear the jurors to assess whether they were exposed to information about the case after they took off their juror hats. The trial court refused to do that, too. Now, opposing counsel points out that the court told y'all at the end of the liability trial that the same jury was going to be brought back for the damages trial and points out that you didn't object to that. Does that change your argument or our analysis in any way? It doesn't, Your Honor, because the court's comment at that point was entirely conditional on whether Walmart submitted an interlocutory appeal or not and Walmart did submit a request for an interlocutory appeal. So, there was no opportunity. Didn't the court also say all this can be sorted out later, we don't have to deal with it now? Indicating, at least to me, that it wasn't imminent and there was no need for you to object at that point. Correct, Your Honor. Do you have to show actual prejudice about this jury question? We do not under Dietz, Your Honor, and that's actually the point of Dietz is that the burden is not on the person in Walmart's position to demonstrate prejudice. The court has to apply the legal test in Dietz and voir dire the jurors to avoid even the potential for prejudice. There's no obligation on our part at this stage to show the prejudice and, in fact, we were completely denied that opportunity by Judge Boyle's failure to voir dire the juror. Did Judge Boyle actually voir dire the jury in any manner? No, not in connection with DeRionne Pamela, Your Honor. He merely instructed them not to rely on information they learned subsequent to their first discharge. I could have liked to address the remedies because another retrial may be unnecessary if the court agrees with Walmart's errors on remedies. Walmart stopped using the mark in 2016. So variety would not be left without a remedy. The typical result of the trademark case is an injunction, which is the practical result here. Variety sought damages under two theories, actual damages in the form of a lost royalty and disgorgement to profits. Neither can stand. With respect to royalty, variety identified no lost sales and no actual damages. It sought lost royalty as actual damages. But when it comes to a lost royalty, the overwhelming weight of the law establishes that you need some licensing history. No circuit court has ever allowed a plaintiff a lost royalty absent evidence of a prior licensing history. That should end the inquiry. Variety didn't demonstrate a licensing history from which it could demonstrate an entitlement to actual damages in the form of a lost royalty. It also failed to demonstrate the amount of royalty with any precision. Its expert put forward a 5% royalty and he arrived at that figure by looking at what he claimed were comparable licenses. But as a matter of law, he had an obligation to demonstrate that they were in fact comparable. And the evidence was entirely one-sided that those comparable or so-called comparable licenses were for national brands like General Electric and Better Homes and Gardens, which the expert conceded were much more widely known than Variety's mark. So there's no basis, even if there were an entitlement to a lost royalty, there were none, to arrive at a figure. So Variety failed to carry the burden of proof that it would have earned a royalty and the amount. If we agree with you that you should get a new remedies trial, do we need to reach this issue about the royalty? Strictly speaking, no. But the issues in this case have gone up and down twice. And it would certainly be... But if we start reaching those issues after we award a new trial, it would be simply an advisory opinion. The court could avoid that by just addressing the remedies directly and finding as a matter of law that there's no entitlement on these facts to a royalty. But it would be an advisory opinion if we were going to grant a new trial based on the problem you argue about the jury being reassembled. Well, Your Honor... Look to me like that would end the discussion. Just like if we, on the first issue, were to agree with you on the willfulness instruction, that would end the issues relating to the case. That would end the advisory opinions. We have enough problems with cases that really mean something, with issues that really mean something. Anyway, I'm just, I'm musing. You go right ahead and answer Judge Thacker's question. I interrupted you. Judge Thacker, could I tell you to repeat your question? I think you did answer it. My question was just, do we have to get into the royalties if we agree with you on the new remedies trial? And you said, strictly speaking, no. And then you were making your argument about how you would like us to determine that as a matter of law anyway. Correct, Your Honor. My time is up, so if I could just close briefly. You go right ahead. At a minimum, Walmart's entitled to a new trial. The judgment's riddled with both procedural errors and irregularities, most notably the improper reassembly of the jury. But this court can and should reverse the judgment outright. Every basis for monetary recovery variety offered is purely theoretical. There's no consumer confusion, no harm to sales or goodwill, and no basis for the massive award in this case. The court should reverse and end this dispute. Thank you. Thank you, Mr. Prezell. Now, Mr. Adams, are you there, sir? Good morning, Your Honor. Good to have you with us, sir. Pleasure to be here. Go right ahead. Good morning, Your Honors. May it please the court. From Walmart's argument, you would scarcely know that we have been here once before. The mandate to the district court included this court's finding that five of the nine factors it considered were either waived by Walmart or were in Variety's favor. For the remaining four factors, strength, similarity, intent, and actual confusion, this court concluded that there were genuine issues of material fact that required a jury determination. In fact, at one point in the opinion, it says, quote, well, the Walmart's mark created a likelihood of confusion is indeed a question for that jury consisting of ordinary consumers and using the nine factors as a guide is well suited to evaluate, close quotes. Now, Walmart is back to tell this court that its opinion and mandate were all wrong, that the same evidence that this court said created genuine issues of material fact were, in fact, when submitted to the jury, so lacking that no reasonable jury could have credited it in arriving in its verdict of willful infringement. To the contrary, much more evidence supporting Variety's position on the four remaining issues than was before this court on Walmart's appeal from the district courts of summary judgment order. That's typical, typically summary judgment cases are on essentially a written record which was the case here. All the additional evidence that Variety relied upon was from Walmart itself. Walmart knew about Variety's backyard registration, and this court said in its slip opinion that it could, quote, not issue. Walmart visited other competitors even though it had no information that these competitors were using backyard. On the other hand, even though Walmart did know that Variety had a registration, it took no steps whatever to determine what, if anything, Variety may have been using its mark on. And another factor that came out was the shifting testimony of one of Walmart's witnesses who initially said in an effort to divert attention from their knowledge of Variety's trademark usage, initially said that there was another third-party user out there that was also using backyard barbecue. When that didn't turn up, the testimony shifted to the fact that there was a trademark registration that they had found. When that didn't turn up, I actually confronted the witness and said, yes, it actually potentially, that was the term that was used, potentially that party that they referred to as a third party might have been Variety itself. That testimony went to the issues of infringement, likelihood of confusion, and willfulness. But there was other information that was told to the jury. $770 million of the sales were made after we specifically objected to their usage by filing the Trademark Trial and Appeal Board action, and half of their sales were made after we filed the complaint. Walmart knew about Variety's backyard registration, but made no effort to investigate how Variety was actually using the mark. Those factors were clearly sufficient to allow a jury to find for Variety, an infringement issue, as well as on the willfulness issue, exactly as the Fourth Circuit said in its remand order. What about the lack of the willfulness instruction? Focus on that. They didn't get the willfulness instruction. Walmart doesn't cite any evidence. And you're emphasizing that they have to prove it's willful. You had to prove it was willful, and they didn't get the willfulness instruction. Two points. First of all, the few cases that Walmart cites do not support their position that the term willfulness necessarily requires a specific instruction. But the significance here is that, and we made a point of this in our brief, was that Walmart came back to the remedies trial with what we refer to as a do-over. In other words, even though the court had already determined in the liabilities trial that the infringement was there and that it was willful, their evidence was that they kept using the synonyms. In other words, there was a great deal of context during the trial testimony about what it was that we contended was willful. Walmart used the term intent. They used the term willful. They asked their witnesses over and over again in the context of these various events that we've been discussing whether or not you intended to infringe Variety's trademark, whether or not your usage was willful and so forth and so on. And so the jury had- Mr. Adams, this is Judge Floyd. With regard, in the context of a trial like this, the plain meaning of willful is not appropriate and the legal definition of willfulness must include intended to infringe. Do you agree with that? There is no requirement in the Fourth Circuit that there be a specific intent to infringe. And there's a case called CROI, the Fourth Circuit case, which makes that point expressly. But let's remember one thing. Under the law, willfulness is not required for an award of profits or damages. And in fact, in this case, Walmart fared quite nicely. The jury, for whatever reason, concluded that they should keep 80 percent of the profits they made. In other words, they made about $250 million in profits and the jury allowed them to keep 80 percent of it. And as far as the royalty is concerned, the royalty they awarded was at the very low end of all the testimony. So you're saying they can infringe by accident? You're saying you can prove that they infringed by accident, right? No, not by accident. But the courts have said that you don't have to show Well, you said they don't need to intend to infringe. But it's inferred, Your Honor. This court's own opinion in this case says that it can be inferred, willfulness can be inferred one way or the other. And in fact, there's a this is worth reading. There's a statement that Walmart made to the district court characterizing the four circuits opinion. But if it's a jury trial, the jury has to find the intent to infringe, willfulness. But they can do that by inference. It's not a question for the court. It's a question for the jury. Exactly. And that's what the jury And it can't be accidental. It has to be intentional. But the inference the intention the intention is almost always determined by an inference from the evidence. No one ever says I intended to infringe. It's always by inference. And this I want to refer it's in our brief opening brief at 38 and 39. But this is Walmart's own this is Walmart's own language. Quote, the fourth circuit recognized that because no testimony was ever given regarding the substance or character of legal advice given to Walmart, the fact finder could draw an inference in Walmart's favor that it followed its counsel's advice and acted in good faith as the fourth circuit concluded or the fact finder could draw an inference against Walmart that it ignored its counsel's advice and acted in bad faith. Now when Walmart says here parenthetically that as the fourth circuit concluded the fourth circuit was construing that in Walmart's favor of course, as it had to do in reviewing the summary judgment grant. But there is at this judge's point what you said may well be true but from a but we're talking about instructions of the jury. Sure, they can infer intent but they have to be told what willfulness is and that is intended to inference and it may be proved by circumstantial or direct evidence. I mean, shouldn't the jury at least be told that? No, and your honor, I think in this particular case as I said, there was a lot of evidence before the jury as to exactly what the parties meant when they were referring to intentional or willful evidence but I don't want to leave open Walmart counsel's arguments about a waiver because under rule 51 Walmart had an obligation to raise that issue with the court and it never did. The only thing Walmart ever did was submit two or three weeks before trial a set of proposed jury instructions but the judge gave So your position is that they waived the jury instruction Yes the willfulness instruction is that correct? Sorry, the district court gave the parties two different opportunities to raise objections to its instructions. There was no charge conference as such. The judge came in with a set of instructions and asked the parties to look them over and to make any objections. This is before the instruction of course and Walmart made a half a dozen different objections but never said anything about willfulness. Then after he instructed the jury in other words after the jury had already been instructed he called the parties up to the bench and out of the hearing of the jury asked the parties again is there anything that I said that I shouldn't have or is there anything that I need to add? Again, Walmart had it's on the record Walmart had two or three different instructions it wanted which the judge denied but it never said a word about willfulness and I think we have to look at this as a practical matter because of the evidence and the fact that the jury actually ended up hearing the evidence twice the jury had a clear understanding of exactly what willfulness meant and if you look at some of the instructions for willfulness all it amounts to is a list of synonyms deliberate, intentional, willfulness they all mean the same thing and clearly the jury understood that and Walmart's counsel had opportunities during his oral argument which he accepted and did to further argue his position on willfulness and it wasn't it wasn't successful but I think the question here is So what's the standard of review? What's the standard of review on this issue there? In a situation where it's where there's a waiver it has to be a plain error of a sort that basically if the error isn't corrected it does manifest injustice and that clearly is not the situation here Walmart had Now we hear about that a lot in criminal cases not so much in civil cases so you say that applies in a civil case like this that this thing should be here this willfulness instruction issue is here on plain error review Well I would think in this case your honor since this is a civil case that any likely prejudice would be substantially less than you might might incur in a criminal case but certainly Well it's all money I mean but here it's a pretty big sum but I'm just trying to get an answer from you your position is it's here on plain error review it wasn't preserved but I want to emphasize the judge didn't get a chance to fix it I want to emphasize again that there's no requirement anywhere in the that there has to be willfulness for there to be an award of profits or Alright assume assume that willfulness has to be proven if what you say it was waived it's here on plain error review correct Yes Alright He says it's not here on because he satisfies plain error Absolutely I think the question is is it really worth going back and doing this whole thing over again as Mr. Puzzello says this case has been going on for six years to do the whole thing over again all liability and all the remedies because You're falling back on a position of so what then Well yeah but I have to emphasize that we're talking about willfulness So what it's not it's 95 million dollars Your Honor with all respect we're talking about Say it real fast I guess We're talking about an issue which doesn't matter as far as the money is concerned but the law is quite clear that you do not have to prove willfulness to prove profits or to be able to recover profits or royalties The reason the issue of willfulness came up is because the language of the Lanham Act which requires the which allows the court to travel damages in a certain case which is usually willfulness and also in this court's opinion in synergistic and one of the six factors it mentions is intent Your point Your position in besides being waived and everything is that you didn't have to prove willfulness anyway No but there's one more No error at all in that case There's one more fact You didn't have to prove willfulness and there can't be an error on failing to give a willfulness I need to mention and that is all of this was reviewed independently by the district court under synergistics after the jury reached its verdict The court in its synergistics opinion referenced all these issues specifically and so there was an equitable overlay on this issue If Judge Boyle had in hindsight thought that perhaps and believe me Walmart made this argument If Judge Boyle had thought that and perhaps it would have been better to have a more detailed issue instruction on willfulness he could have corrected it in his synergistics opinion which he issued two or three weeks after the trial was over Yeah I don't know how much time you have left but speaking of after the trial was over I really would like you to address the 110 days between the liability phase and the damages phase and bringing the same jury back because I appreciate that your honor I'm actually into the red but give me a minute or two to do that if you would be You go ahead and answer questions for Judge Packer or Judge Boyle or me as long as we have them you go right ahead Thank you When the district court first mentioned the possibility of a bifurcated trial and then he said I'm going to bifurcate this trial what he said was if the parties agree I may consider allowing an interlocutory review that way you can go up on the issue of liability and if Walmart wins you don't have to come back if they do you come back and we'll have a trial we'll use the same jury well what did Walmart do we didn't agree on an interlocutory trial we wanted to go ahead and have a trial on remedies well so there was a 110 day gap between those two trials but what did Walmart do they filed a motion for interlocutory appeal which the judge denied but if he had granted it there would have been a delay of nine months or perhaps as much as a year I'm not as concerned about what Walmart did as what the district court did not do was there any of the jury after 110 days no I don't think why isn't that a problem I don't think it is because as again the I don't know what the voir dire would have been directed to this case was a non-issue in Elizabeth City North  there was absolutely no media coverage is there anything in the record that shows that it was a non-issue in Elizabeth City North  think there is any type of media coverage that could have prejudiced the jury does it require actual prejudice does it your honor there are several cases in the fourth circuit that say specifically that you cannot fault a judge for not conducting a jurisdiction of voir dire I'm still talking I'm talking about Dietz in the Supreme Court not the fourth circuit does Dietz require actual prejudice no but Dietz was not a bifurcation case first of all and my other question is you're talking about how Wal-Mart couldn't show prejudice or any problems in the media but how could they when there was no voir dire that's what the voir dire would be for your honor I think that the district court was concerned and we were very concerned that all of these cases they might not have thought of otherwise Wal-Mart had already lost as you say $95 million verdict and so their strategy at this point was to come back and perhaps browbeat the jury into a situation where they could file a motion for a mistrial and that's really what they've done here they've asked the court to go back and redo the whole thing over again without any evidence that there was any media coverage or anything at all that would have resulted in a biased jury remember every one of the jurors in this case was a regular Wal-Mart customer they had already concluded that Wal-Mart was a willful infringer so it's hard to imagine what additional information there might have been that would have had any effect beyond what the jury already knew I don't have any other questions no thanks Judge Floyd no very good thank you Mr. Adams thank you back to you here in a few minutes Mr. Prezella yes your honor I want to make sure I was clear on the willfulness instruction issue we proposed an instruction and objected to the failure to give our record because we made that objection we need to show only that it was an abusive discretion not to give an instruction and that the error was not harmless if you disagree you say you objected that the charged consorts Mr. Prezella yes your honor rather than going back and forth with variety on the record I would just invite the court to look at JA413 JA431 and JA840 the record was preserved what's the last one there JA840 which is the transcript your honor where we objected at the charge conference one thing that was clear was that during the trial in addition to the jury instruction that Wal-Mart offered Wal-Mart separately  strike testimony from variety's general counsel concerning willfulness and for an additional willfulness jury instruction and that motion was denied so there's a there's a additional objection here that you might not otherwise see there's there should be no question whatsoever as to the preservation right so that is an abusive discretion standard if you disagree that we preserved the error which we plainly did I think review is still for plain error and the error is plain for failure to instruct on a term of law but getting to the merits of that the evidence of willfulness was paper thin it only amounted at best to Wal-Mart's knowledge of variety's use that's insufficient as a evidence for a finding in support of willfulness and    so deep on this issue because all they have to do is find the evidence that they can find the evidence that    papers that may have included that claim. And after the liability trial, they didn't ask for a directed verdict on that claim. They did nothing. So the liability trial concluded, liability was over, and they said nothing about that unfair competition claim. The notion that it wasn't... Mr. Pacella, that might be true, but let me ask it this way. Should we affirm the district court on this matter if we believe it was procedurally incorrect to dismiss a claim by way of a motion in limine? Yes, it should be affirmed because it was waived, and it was waived through Variety's course of conduct. It didn't... So your argument is purely that it was waived, and the fact that it occurred that that motion in limine was made and has nothing to do with it? Correct, Your Honor. It was waived, and the nature of how it came up in the course of the proceedings is essentially irrelevant because the waiver occurred previously. I'm in the red, so unless the court has any other questions, I would just like to close with that Walmart's new trial, and the court should reverse and end this dispute on damages to avoid any further proceedings. Thank you. Thank you, Mr. Pacella. Mr. Adams? Yes, Your Honor. One point before I begin otherwise, and I should have mentioned this previously, and that is the decision on willfulness was an advisory opinion. This court has said repeatedly that willfulness and intent are equitable considerations. As I said a few moments ago, the district court did a separate analysis based on equitable principles as a part of its synergistics effect analysis and concluded that based on his equitable judgment that the Now, on to the question of our motion in limine and an unfair competition claim. Walmart moved for JMOL twice on our unfair competition claim, and it was denied twice. Then it turned around and filed a motion in limine to prevent admission of prejudicial evidence. This was not a substitute for a JMOL motion. There was no waiver by variety. Its unfair competition case was in this case from the very beginning to the very end. The problem with Walmart's argument is that it does not understand or it chooses to ignore the way this is handled under North Carolina law. And I can refer the court to the Polo v. Craftex case, which is referred to in our brief page 65, where the court said we need not consider whether under these circumstances the plant was entitled to an award of damages under the Lanham Act, for it to such an award upon its common law claim of unfair competition and its claim in the North Carolina's Unfair Trade Practices Act. Walmart did not move in limine regarding the counts three and four of our complaint, which relate to common law trademark infringement or common law unfair competition. So just as under federal law here, there is no case law in the North Carolina law that says that unfair competition per se bars damages based on royalty without a prior license in history. Those two factors come together very clearly. So Walmart is simply wrong. It used the motion in limine as a subterfuge to get the unfair competition claim out of the case. Now, in the pattern jury instructions in North Carolina, this is set out in our brief, you don't give a jury instruction to the jury on unfair competition. You give factual issues to the jury, and then the judge decides as a matter of law whether those facts result in an unfair competition finding. That's what happened in Polo, that's what happened in Exclaim. There are numerous other cases that accomplish exactly the same result as should have happened in this case. There simply was no waiver, and for that reason, it was improper for the court to rule that we had waived it because we didn't ask for jury instructions on unfair competition, or we didn't ask for a jury verdict blank on unfair competition. The only, in fact, if you look in the pattern jury instructions, the only unfair competition instruction is basically one on causation. And there was several causation instructions in the jury instructions on causation, so there's no reason for the judge to go further. Now, if we agree with you, do you want the same jury brought back, or do you want a new jury? If you agree with me, we would ask for the same jury because they will remember, or they will remember a large part of what the case was about, whereas any other jury wouldn't know anything about it. So yes, without conceding for a moment, it would be appropriate to reverse the case or send it back for a new trial. Clearly, given the choice, we'd much prefer to have the juror that was there than a brand new jury. Anything else? Well, I'll just point out, Your Honor, that the judge asked the jury at the beginning of the remedies trial, he told the jury, he read the jury a statement, and he told the jury in some length, their duty to decide the case only on the evidence they heard in the courtroom. He told them that they'd taken an oath to do that, and after he finished, he said, y'all understand that? And according to the court reporter, all the judges responded affirmatively. So there are Fourth Circuit cases that say that simple speculation or conjecture about jury prejudice is not sufficient to reverse the case because of a judge's discretionary decision not to have a supplemental wide year. So if you have no further questions, thank you very much, Your Honors. Thank you, Mr. Adams. If we were in Richmond, we'd come down and shake hands with the lawyers and thank them for doing a good job, but we can't do that here, but we can thank you for being with us.
judges: Robert B. King, Henry F. Floyd, Stephanie D. Thacker